## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMMANNUEL KUSI APPIAH,      :     Civil No. 3:24-cv-2222
                     :
          Petitioner     :     (Judge Mariani)
                     :
         v.            :
                     :
WARDEN CRAIG LOWE,        :
                     :
          Respondent    :

## MEMORANDUM

Petitioner Emmanuel Kusi Appiah ("Appiah") is an immigration detainee in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). He is currently being detained at the Pike County Correctional Facility, in Hawley, Pennsylvania. Appiah commenced this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). He seeks release from custody or, in the alternative, an individualized bond hearing. (*Id.* at 15-16). For the reasons set forth below, the Court will deny habeas relief.

## I.   Factual Background

Appiah is a citizen and native of Ghana. (Doc. 11-1). On March 10, 1993, Appiah was admitted to the United States in Baltimore, Maryland, on an F-24 Visa[1], unmarried child of an immigrant. (*Id.* at 1, 12).

---

[1] According to the United States Department of State website, the F-24 Visa is an immigrant visa for the unmarried child of a lawful permanent resident of the United States. *See*

In January 2001, Appiah was charged in the Circuit Court of Fairfax County, Virginia, with two counts of uttering and delivering forged checks, in violation of Virginia Code § 18.2-172. (*Id.* at 3-4). In December 2001, following a jury trial, Appiah was found guilty on both counts and was subsequently sentenced to two years' incarceration. (*Id.* at 5-7).

On February 13, 2004, Appiah was charged as removable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony.[2] (*Id.* at 12).

On February 17, 2004, ICE officers served Appiah with a Notice to Appear for removal proceedings. (*Id.* at 11).

Appiah filed an application for withholding of removal. (*See* Doc. 11-2). On October 26, 2004, an immigration judge granted Appiah's application for withholding of removal. (*Id.*). Both parties waived their right to appeal. (*See id.*).

In November 2017, Appiah was charged in the United States District Court for the District of Maryland, with six counts: (counts 1-4) bank fraud, in violation of 18 U.S.C. §§ 2 and 1344; and (counts 5-6) aggravated identity theft, in violation of 18 U.S.C. §§ 2 and 1028A(a)(1). (Doc. 11-3, at 48-56). In February 2019, a superseding indictment was filed, charging Appiah with seven counts, consisting of the original six charges and an added

---

https://travel.state.gov/content/dam/visas/Statistics/Immigrant-Statistics/MonthlyIVIssuances/Immigrant%20Visa%20Symbols.pdf (visited Feb. 7, 2025).

[2]    INA § 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)) states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable."

charge of bank fraud conspiracy, in violation of 18 U.S.C. § 1349. (*Id.* at 36-47). In March 2019, following a jury trial, Appiah was found guilty on all counts of the superseding indictment and, on July 3, 2019, was sentenced to a total term of imprisonment of 75 months' incarceration. (*Id.* at 3-8, 13).

Based on Appiah's 2019 federal conviction, the Department of Homeland Security ("DHS") moved, on April 26, 2023, to reopen the immigration proceedings and terminate Appiah's withholding of removal status. (Doc. 11-4). Appiah responded to the motion by filing a motion to reopen and terminate the removal proceedings. (Doc. 11-5). On July 19, 2023, an immigration judge denied Appiah's motion to reopen and terminate. (Doc. 11-6). The immigration judge also dismissed the matter as moot, finding that Appiah did not have any matters before the court. (Doc. 11-7). On August 4, 2023, an immigration judge denied DHS's motion to reopen. (Doc. 11-8, at 2).

On August 21, 2023, DHS renewed their motion to reopen the administrative proceedings and terminate Appiah's withholding of removal. (Doc. 11-9). On August 30, 2023, an immigration judge granted DHS's motion to reopen. (Doc. 11-11). The immigration judge found that Appiah's convictions for bank fraud, bank fraud conspiracy, and aggravated identity theft were material and post-dated Appiah's grant of withholding of removal. (*Id.*). The immigration judge reopened the proceedings "for the purpose of terminating [Appiah's] withholding of removal" status. (*Id.*).

3

On October 13, 2023, DHS served Appiah with an I-261, Notice of Additional Charges of Inadmissibility. (Doc. 11-13). Appiah was charged as removable under Section 237(a)(2)(A)(iii) of the INA for having been convicted of an aggravated felony as defined in Section 101(a)(43)(M) of the Act, a law relating to fraud or deceit in which the loss of the victim or victims exceeds $10,000; and Section 237(a)(2)(A)(iii) of the INA for having been convicted of an aggravated felony as defined in section 101(a)(43)(U) of the Act, a law relating to conspiracy to commit an aggravated felony (section 101(a)(43)(M)). (*Id.*).

On November 21, 2023, DHS moved to terminate Appiah's withholding of removal status. (Doc. 11-14). On December 11, 2023, an immigration judge terminated Appiah's withholding of removal status. (Doc. 11-15). On January 8, 2024, that same immigration judge ordered Appiah removed to Ghana. (Doc. 11-16).

Appiah appealed to the Board of Immigration Appeals ("BIA"). (Doc. 11-17). On May 22, 2024, the BIA found no error in the immigration judge's decision and dismissed Appiah's appeal. (Doc. 11-18).

Appiah then filed a petition for review of the BIA's dismissal with the United States Court of Appeals for the Second Circuit. *See Appiah v. Bondi*, No. 24-1593 (2d Cir.). He also filed a motion to stay his removal. (Doc. 11-19, Declaration of Deportation Officer Fadi Shadid ("Shadid Decl."), ¶ 27). Appiah's petition for review and motion to stay are still pending before the Second Circuit Court of Appeals. (*See id.*).

4

ICE has been working with officials from the Ghana Embassy since June of 2024 to effectuate Appiah's removal.  (*Id.* ¶ 23).  On June 6, 2024, ICE Enforcement and Removal Operations ("ERO") officials spoke with Appiah and requested his national identity documents from Ghana.  (*Id.*).  On June 10, 2024, ERO officials forwarded a travel document packet to the Embassy of Ghana.  (*Id.* ¶ 24).  On June 14, 2024, Appiah underwent an interview with officials from Ghana.  (*Id.* ¶ 26).  ERO officials have been regularly communicating with the Ghana Embassy and requesting updates on Appiah's travel document.  (*Id.* ¶ 28).

Appiah was released from federal confinement into the custody of ICE on July 28, 2023.  (*Id.* ¶ 11; Doc. 11-9, at 65).

## II.   **Legal Standard**

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).  Because Appiah filed the instant petition while he was detained within the jurisdiction of this Court, is still currently detained by ICE, and asserts that his continued detention violates due process, this Court has jurisdiction over his Section 2241 petition.  *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

III.    **Discussion**

The Court must first determine the basis for Appiah's detention.  The government derives its authority to detain removable aliens from two different statutes: 8 U.S.C. § 1226 and 8 U.S.C. § 1231.  Appiah asserts that he is being detained pursuant to 8 U.S.C. § 1231(a), (*see* Doc. 12), while Respondent maintains that Appiah's detention is under 8 U.S.C. § 1226(c), (*see* Doc. 10).

8 U.S.C. § 1226(c) provides for pre-removal mandatory detention of individuals previously convicted of certain criminal offenses.  *See* 8 U.S.C. § 1226(c).  An individual detained under § 1226(c) may be released only if the Attorney General decides that release is necessary to protect a witness and that the individual is not a flight risk and does not pose a danger to society.  *See id.* § 1226(c)(4).  Thus, "section 1226(c) does not give the Attorney General any authority to release these [individuals] on bond."  *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 473 (3d Cir. 2015) (citing *Demore v. Kim*, 538 U.S. 510, 521 (2003)), *abrogated in part on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018).

8 U.S.C. § 1231(a) is the post-removal detention provision and "governs the detention, release, and removal of individuals 'ordered removed.'"  *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022).

Appiah contends that because the BIA denied his appeal, and the Second Circuit has not yet issued a stay of removal, he is being detained under 8 U.S.C. § 1231(a), the post-removal detention provision.  (Doc. 12, at 3).

The Third Circuit has held that when a Court of Appeals has issued a stay of removal, the alien is not detained under § 1231, but remains detained under § 1226.  *Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 270 (3d Cir. 2012), *abrogated in part on other grounds by Jennings*, 583 U.S. 281.  Here, although the Second Circuit has not granted Appiah a stay of removal, his motion for a stay of removal and petition for review remain pending before the Second Circuit Court of Appeals.  *See Appiah v. Bondi*, No. 24-1593 (2d Cir.).  His removal order is in the process of being judicially reviewed.  Hence, the order of removal has not become administratively final, and Appiah is still considered to be in pre-removal immigration detention.  *See* 8 U.S.C. § 1231(a)(1)(B)(ii) (providing that the removal period begins on…the following: "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order."); *see also Leslie*, 678 F.3d at 270 (noting that "the two years for which Leslie was detained while [the Third Circuit] stayed his removal…was governed by the pre-removal statute, § 1226.").  Appiah's removal period will begin when the Court of Appeals decides his petition for review and request for a stay of removal.  His removal proceedings are ongoing with a "definite termination point," and he continues to be detained pursuant to Section 1226(c), not Section 1231(a).  *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 206-07 (3d

7

Cir. 2020) (analyzing petitioner's habeas claim—regarding continued ICE detention—under

Section 1226(c) where petitioner had appealed his order of removal to BIA, received

adverse decision, and then petitioned for review with the Third Circuit); *Chavez-Alvarez*, 783

F.3d at 472 (same), *abrogated in part on other grounds by Jennings*, 583 U.S. 281; *see also*

*Jennings*, 583 U.S. at 304 ("detention under § 1226(c) has 'a definite termination point': the

conclusion of removal proceedings") (citation omitted).

### A.    8 U.S.C. § 1226(c)

In *Jennings v. Rodriguez*, 583 U.S. 281, the United States Supreme Court rejected

the premise that 8 U.S.C. § 1226(c) contains an implicit time limit for pre-removal detention.

*Jennings*, 583 U.S. at 303-06.  The United States Court of Appeals for the Third Circuit,

however, has explained that *Jennings* "did not call into question [the] constitutional holding

in *Diop* [*v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011)] that detention under §

1226(c) may violate due process if unreasonably long." *Borbot v. Warden Hudson Cnty.*

*Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018).  Thus, "even after *Jennings*, an alien

lawfully present but detained under § 1226(c) can still challenge his detention under the Due

Process Clause." *German Santos*, 965 F.3d at 210.

When reviewing such as-applied challenges to the constitutionality of continued

mandatory detention under Section 1226(c), "[t]he most important factor is the duration of

detention." *See id.* at 211.  Additionally, the Court must consider the other circumstances of

detention, including: (1) "whether the detention is likely to continue" (2) "the reasons for the

8

delay, such as a detainee's request for continuances"; and (3) "whether the alien's conditions of confinement are 'meaningfully different' from criminal punishment." *Id.* (quoting *Chavez-Alvarez*, 783 F.3d at 478). There is no "bright-line" threshold for reasonableness; rather, whether continued detention is reasonable is a "highly fact-specific" inquiry. *Id.* at 210 (quoting *Chavez-Alvarez*, 783 F.3d at 474).

Initially, the Court notes that, under the facts of this case, it cannot grant Appiah release from custody. Rather, the Court is limited to resolving whether, under the *German Santos* factors, Appiah is entitled to an individualized bond hearing to determine if "detention is still necessary to fulfill [Section 1226(c)]'s purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Diop*, 656 F.3d at 231. The Court considers each factor in turn.

With respect to the first, and most important, consideration—duration of detention—Appiah has been detained in ICE custody since July 28, 2023, a little over 18 months. District courts in this circuit have frequently found that detention under Section 1226(c) for just over a year does not, in itself, amount to an arbitrary deprivation of liberty or weigh in favor of habeas relief. *See Gabriel v. Barr*, No. 1:20-cv-1054, 2021 WL 268996, at *3 (M.D. Pa. Jan. 27, 2021) (collecting cases). The decisions cited in *Gabriel* stand in contrast to cases where detention was approaching, or exceeded, two years in length. *See, e.g.*, *German Santos*, 965 F.3d at 212 (two-and-a-half years' detention); *Clarke v. Doll*, No. 3:20-cv-31, 481 F.Supp.3d 394, 2020 WL 4933696, at *1 (M.D. Pa. Aug. 24, 2020) (20 months);

*Chikerema v. Lowe*, No. 1:18-cv-1031, 2019 WL 3891086, (M.D. Pa. Aug. 19, 2019) (over

20 months): *Vega v. Doll*, No. 3:17-cv-1440, 2018 WL 3756755, at *5 (M.D. Pa. Aug. 8,

2018) (21 months).  Consequently, Appiah's duration of detention—approximately 18

months—does not weigh in favor of relief.

The next factor that must be considered is whether detention is likely to continue.

This factor also weighs against Appiah.  Although there is no date certain for a decision,

Appiah is approaching the end of his removal proceedings, as his appeal in the Second

Circuit is awaiting a final determination.  *See Appiah v. Bondi*, No. 24-1593 (2d Cir.).  Thus,

his removal proceedings have "a definite termination point" that is likely to occur later this

year, provided the Second Circuit does not reverse or remand.  *Jennings*, 583 U.S. at 304.

The reasons for delay provide no support for Appiah's petition.  There is no evidence

that the government has unreasonably delayed the immigration proceedings, nor that

Appiah is operating in anything other than good faith in his pursuit of relief from removal.

Appiah entered ICE custody on July 28, 2023.  Since then, Appiah has had multiple

individualized hearings regarding the merits of his withholding status, and he has pursued

an appeal at the BIA and a petition for review with the Second Circuit.  Such delays cannot

be attributed to either party.  Consequently, this factor does not weigh in favor or against

either party.

The final factor is whether the petitioner's conditions of confinement are

"'meaningfully different' from criminal punishment."  *German Santos*, 965 F.3d at 211

(quoting *Chavez-Alvarez*, 783 F.3d at 478).  Respondent notes that the *German Santos* Court found that the conditions at the Pike County Correctional Facility were punitive as to immigration detainees.  (Doc. 10, at 25 (citing *German Santos*, 965 F.3d at 213)).  "Respondent does not challenge that rationale and submits that this factor should weigh in favor of granting the Petitioner a bond hearing."  (Doc. 10, at 25).  Given Respondent's position, this final factor supports Appiah's claim.

When reviewing the totality of the circumstances, as discussed above, the Court concludes that relief is not warranted.  The *German Santos* factors, on whole, do not militate in favor of finding that Appiah's continued mandatory detention under Section 1226(c) is unreasonable and thus unconstitutional.  Only one of the four factors supports Appiah's claim.  Nonetheless, should this detention become prolonged to the point where it does become unreasonable, Appiah may file a new Section 2241 petition in the appropriate court.

B.    8 U.S.C. § 1231(a)

Assuming *arguendo* that Appiah is properly viewed as being detained under 8 U.S.C. § 1231(a), he would likewise not be entitled to relief under that section.  Appiah brings an as-applied due process challenge to his continued detention under § 1231(a)(6).  (Doc. 1, at 3, 6-16; Doc. 12, at 2-8).  He argues that his detention has become unreasonably prolonged, and that he should be released or afforded a bond hearing before an immigration judge.  (*Id.*).

Section 1231(a)(1)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The noncitizen must be detained during this 90-day timeframe, *id.* § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien" (emphasis added)), which is "referred to as the 'removal period.'" *Id.* § 1231(a)(1)(A). That 90-day period begins to run, for noncitizens who are detained or confined for criminal offenses, on "the date the alien is released from [non-immigration] detention or confinement." *Id.* § 1231(a)(1)(B)(iii). Following expiration of the 90-day removal period, certain noncitizens "may" be detained if they fall into one of four distinct categories: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [determined] 'to be a risk to the community'; and (4) those [determined] to be 'unlikely to comply with the order of removal.'" *Arteaga-Martinez*, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).

In *Johnson v. Arteaga-Martinez*, the Supreme Court abrogated the Third Circuit's holding in *Guerrero Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208 (3d Cir. 2019), that Section 1231(a)(6) presumptively "requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *Arteaga-Martinez*, 596 U.S. at 576. Importantly, however, the Court did not address the merits of the petitioner's individualized Due Process Clause challenge or

hold that such a claim could not be pursued.  *See id.* at 583-84.  Moreover, the government

reassured the *Arteaga-Martinez* Court that "as-applied constitutional challenges" to

prolonged detention under Section 1231(a)(6) "remain available."  *Id.* at 583.

In sum, the *Arteaga-Martinez* Court held that, as a matter of statutory interpretation,

§ 1231(a)(6) does not require the government to provide noncitizen detainees with a bond

hearing before an immigration judge after six months, nor does the statute require that the

government bear the burden of proving a risk of flight or danger to the community by clear

and convincing evidence.  *Arteaga-Martinez*, 596 U.S. 573.  Therefore, to the extent that

Appiah seeks a bond hearing under § 1231(a)(6) (*see* Doc. 1, at 3, 16; Doc. 12, at 8), that

statute does not require a bond hearing, nor does it hold the government to a clear and

convincing standard of proof.  *Arteaga-Martinez*, 596 U.S. at 579-81.  Appiah is not

statutorily entitled to a bond hearing.  *See id.*

The Court further finds that, if Appiah was detained under Section 1231(a)(6), his

detention has not become unconstitutionally prolonged.  He has failed to establish "good

reason to believe" that there is not a "significant likelihood of removal in the reasonably

foreseeable future."  *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).  Appiah's

unsupported arguments are insufficient to substantiate a constitutional violation.  Thus, his

due process claim fails at the first step.

Even if Appiah had carried his burden, Respondent has rebutted that showing.  ICE

is actively working to effectuate Appiah's removal to Ghana.  On June 10, 2024, ERO

officials forwarded a travel document packet to the Embassy of Ghana. (Doc. 11-19, Shadid Decl. ¶ 24). On June 14, 2024, Appiah underwent an interview with officials from Ghana. (*Id.* ¶ 26). ERO officials have been regularly communicating with the Ghana Embassy and requesting updates on Appiah's travel document. (*Id.* ¶ 28). Respondent represents that Ghana has not denied Appiah's citizenship or the issuance of a travel document, and his removal remains likely to occur in the reasonably foreseeable future. (*Id.* ¶ 30).

Appiah has failed to show that there is no significant likelihood of removal in the reasonably foreseeable future. The Court, therefore, would deny Appiah's Section 2241 petition if he was detained under 8 U.S.C. § 1231(a), the post-removal detention provision.

## IV.   Conclusion

The Court will deny Appiah's petition (Doc. 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice to his right to file a new petition in the appropriate court should his detention become unreasonable.

A separate Order shall issue.


Robert D. Mariani
United States District Judge

Dated: February 14, 2025

14